516 A.2d 1285

In the Matter of: The Nomination Paper of Kevin E. Cooper, Independent Candidate for the Office of Representative in the General Assembly From the 24th Legislative District of Allegheny County. Joseph Preston, Jr., Petitioner.

Heard September 11, 1984, by Judge PALLADINO.

*John J. Connelly, Jr., Connelly, Martsolf & Reid,* for petitioner.

*Clifford C. Cooper,* for respondent.

*David F. Phifer,* General Counsel, for Department of State.

OPINION BY JUDGE PALLADINO, September 24, 1984:
This matter comes before this Court under the provisions of the Pennsylvania Election Code[1] (Code) and was instituted by Joseph Preston, Jr., (Petitioner), through the filing of a Petition to Set Aside Nomination Paper of Kevin E. Cooper (Respondent) as Independent candidate for the Office of Representative of the 24th Legislative District of the Commonwealth of Pennsylvania. Petitioner alleges in his petition that Respondent has failed to obtain the requisite number of valid signatures for the nomination.

Respondent's nomination paper, which was filed on April 18, 1984, initially contained 558 signatures. The

---

[1] Act of June 2, 1937, P.L. 1333, *as amended,* 25 P.S. §§2600-4051.

Bureau of Elections struck 156 signatures for various reasons when the nomination paper was filed, leaving a total of 402 signatures. Petitioner filed his petition to set aside Respondent's nomination paper on August 8, 1984. In his petition Petitioner challenges 301 of the remaining signatures as invalid for various reasons which, *inter alia,* include: the signators are not registered to vote in the 24th Legislative District; the signators reside outside the boundaries of the 24th Legislative District; and the signatures were signed by the same individual and/or do not match the signatures on the corresponding county registration cards.

At the hearing, Petitioner presented the testimony of the Deputy Director of the County of Allegheny Department of Elections who testified in great detail concerning whether a number of the signators were registered to vote in and/or resided in the 24th Legislative District. Petitioner also presented the testimony of a handwriting expert whose qualifications were agreed to by Respondent. Both Petitioner and Respondent also testified at the hearing. After hearing and a review of the evidence presented, the following findings of fact are made:

1. The Petitioner was told by the State Bureau of Elections that because of pending litigation, the time for filing nomination petitions and papers was extended from April 23, 1984 to August 1, 1984.

2. That Petitioner relied on this information and waited until August 8, 1984, to file his objections to Respondent's nomination paper.

3. That with respect to the signatures affixed to nominating document number one:

a) sixteen of the signatures represent persons who are not registered to vote in the 24th Legislative District; and

b) forty-seven of the signatures were either signed by the same individual and/or do not match the signatures on the county registration cards.[2]

4. That with respect to the signatures affixed to nominating document number two:

a) eleven of the signatures represent persons who are not registered to vote in the 24th Legislative District;

b) nine of the signatures represent persons who reside outside the boundaries of the 24th Legislative District; and

c) seven of the signatures were signed by the same individual.

5. With respect to the signatures affixed to nominating document number three:

a) two of the signatures were signed by other individuals.

6. With respect to the signatures affixed to nominating document number five:

a) four of the signatures represent persons who reside outside the boundaries of the 24th Legislative District; and

b) one of the signatures was signed by another individual.

7. With respect to the signatures affixed to nominating document number six:

a) one of the signatures represents a person who is not registered to vote in the 24th Legislative District;

b) one signature represents a person whose address does not exist; and

---

[2] With respect to the handwriting expert's testimony that a particular group of signatures were written by the same individual, one of the signatures will be deemed valid absent proof that all of the signatures do not match the corresponding registration cards.

c) one signature represents a person whose name appears on another nominating document; and[3]

d) fifty-four of the signatures were either signed by the same individual and/or do not match the signatures on the county registration cards.

8. That with respect to the signatures affixed to nominating document number seven:

a) twenty-two of the signatures represent persons who are not registered to vote in the 24th Legislative District; and

b) sixty-six of the signatures were either signed by the same individual and/or do not match the signatures on the county registration cards.

9. With respect to the signatures affixed to nominating document number eight:

a) one signature represents a person who is not registered to vote in the 24th Legislative District; and

b) two of the signatures represent persons who reside outside the boundaries of the 24th Legislative District; and

c) seventy-one of the signatures were written by the same individual.

10. With respect to the signatures affixed to nominating document number nine:

a) three of the signatures represent persons who are not registered to vote in the 24th Legislative District; and

b) four of the signatures represent persons who reside outside the boundaries of the 24th Legislative District.

---

[3] The same signature also appeared on nominating document number eight which we will count as valid.

138

11. With respect to the signatures affixed to nominating document number ten:

a) six of the signatures represent persons who are not registered to vote in the 24th Legislative District.

## DISCUSSION

A threshold issue raised by Respondent at the hearing concerns whether the petition to set aside Respondent's nomination paper was timely filed. Section 977 of the Code, 25 P.S. §2937, provides in pertinent part as follows:

All nomination . . . papers received and filed within the period limited by this Act shall be deemed valid, unless, within seven (7) days after the last day for filing said nomination . . . paper, a petition is presented to the Court specifically setting forth the objections thereto, and praying that said paper be set aside.

This section would have required Petitioner to have filed his objections to Respondent's nomination paper within seven (7) days after the statutory deadline established by Section 953 of the Code, 25 P.S. §2913, which was April 23, 1984. Thus, Petitioner's objections would have been due on April 30, 1984.

As noted in our findings, Petitioner did not file his objections until August 8, 1984. According to the uncontradicted testimony of Petitioner, which we accept as credible, the Bureau of Elections in Harrisburg informed Petitioner sometime in late April, 1984, that as a result of pending litigation, the time for filing nomination papers had been extended to August 1, 1984.[4] Peti-

---

[4] At the time there were pending two cases: *Hall et al. v. Davis,* No. 84-1057 (E.D. Pa.) and *Libertarian Party of Pennsylvania v. Davis,* No. 84-0262 (M.D. Pa.). Both cases culminated in the issu-

tioner argues that he was advised not to file his objections at that time inasmuch as the extension of the deadline would have allowed Respondent the opportunity to refile his nomination paper.

Because Petitioner's testimony was unrebutted and because he relied on this advice from the Bureau of Elections, we conclude that Petitioner's petition to set aside Respondent's nomination paper should not be dismissed as untimely. *See In Re: Nomination Paper of Thomas E. Welsh*, 458 Pa. 645, 327 A.2d 6 (1974).

Turning now to the merits, the Code requires an individual to obtain the signatures of 309 qualified electors for the Office of Representatives of the 24th Legislative District.[5] We find that Respondent did not obtain the required number of valid signatures.

Signatures of persons who are not registered voters should be stricken from a nomination paper. *McLaughlin Nomination Petition*, 26 Pa. Commonwealth Ct. 16, 362 A.2d 469 (1976).[6] Moreover, the uncon-

---

ance of consent decrees which extended the deadline for filing nomination papers to August 1, 1984. Although Respondent argues that the extension applied only to the political bodies in these two cases, the fact remains that Petitioner was told that the deadline had been extended for all nomination papers.

[5] The requirement that 309 signatures be obtained for an Independent candidate is arrived at by calculating 2% of the largest entire vote cast for any officer elected at the last preceding election in the electoral district for which nomination papers are to be filed, and shall not be less than the number of signers required for nomination petitions for party candidates for the same office. Section 951(B) of the Code, 25 P.S. §2911(b).

[6] See Section 951(c) of the Code, 25 P.S. §2911(c). This Section provides in pertinent part:

More than one candidate may be nominated by one nomination paper and candidates for more than one office may be nominated by one nomination paper; Provided, That each political body nominating does not nominate more candidates than there are offices to be voted for at the

tradicted testimony of a handwriting expert is sufficient to invalidate signatures on the ground that the signatures were signed by the same person or by another individual. *Elliot Nomination Petition,* 26 Pa. Commonwealth Ct. 20, 362 A.2d 438 (1976) aff'd 466 Pa. 463, 353 A.2d 446 (1976).

The record in this case shows that eighty of the signatures were either signed by individuals who were not registered to vote or who did not reside in the 24th Legislative District. 246 of the signatures were either signed by the same individual and/or did not match the signatures on the corresponding registration cards. There was also one signature which appeared twice on Respondent's nomination paper.

We find that there are 329 invalid signatures on Respondent's nomination paper. As stated earlier, the nomination paper must contain a minimum of 309 signatures. The total number of signatures offered on the nomination paper was 558.[7] When the number found to be invalid is subtracted, the remainder is 229 which is well short of the number required for nomination. Respondent, therefore, has an insufficient number of valid signatures to support his nomination paper. Accordingly, this Court enters an order setting aside the nomination paper of Kevin E. Cooper.

### ORDER

AND NOW, September 24, 1984, after hearing, it being found and concluded that the nomination paper of

ensuing election: And provided, That all the signers on each nomination paper are qualified to vote for all the candidates nominated therein.

[7] Although the Bureau of Elections struck 156 signatures when Respondent's nomination paper was filed, for purposes of our calculations we will count as valid these signatures inasmuch as the defects were amendable and Respondent did not believe, at that time, that there was a need to amend.

Kevin E. Cooper as Independent candidate for the Office of Representative in the General Assembly for the 24th Legislative District contains the signatures of less than 309 registered and enrolled electors of the 24th Legislative District of the Commonwealth of Pennsylvania, the prayer of Joseph Preston, Jr., to set aside said nomination paper is granted, and it is ordered that the nomination paper of Kevin E. Cooper consisting of 10 separate documents is hereby set aside. The Prothonotary is directed to notify forthwith the parties hereto and their counsel of this order and also to certify a copy thereof to the Secretary of the Commonwealth of Pennsylvania.

### APPENDIX

The signatures on the following lines are found to be invalid and the objections thereto are sustained.
1. Nominating document number one:
    a) Unregistered voters: 18, 23, 27, 28, 31, 33, 34, 40, 46, 48, 51, 56, 69, 70, 72 and 75.
    b) Signatures signed by same individual and/or do not match county registration cards: 17, 19, 20, 21, 22, 25, 26, 29, 32, 35, 36, 37, 38, 39, 41, 43-63, 65, 66, 67, 68, 71, 73, 74, 76, 77, 79 and 80.
2. Nominating document number two:
    a) Unregistered voters: 13, 14, 19, 20, 32, 36, 38, 48, 56, 66 and 77.
    b) Do not reside in district: 4, 22, 23, 24, 26, 29, 30, 33 and 44.
    c) Signatures signed by same individual: 41, 52, 67, 72, 77, 79 and 80.
3. Nominating document number three:
    a) Signatures signed by same individual: 20 and 22.

4. Nominating document number five:
   a) Do not reside in district: 1, 6, 23 and 28.
   b) Signed by another individual: 8.
5. Nominating document number six:
   a) Unregistered voter: 74.
   b) Address nonexistent: 2.
   c) Signature appears on another nominating document: 31.
   d) Signatures signed by same individual and/or do not match county registration cards: 6, 7, 8, 10, 13, 14, 15, 16, 18, 19, 20-26, 28, 29, 33, 34, 35, 37, 38, 39, 41, 43, 44, 46, 47, 48, 49-54 and 56-72.
6. Nominating document number seven:
   a) Unregistered voters: 8, 9, 12, 13, 14, 15, 18, 19, 21, 25, 26, 27, 38, 45, 46, 48, 52, 58, 64, 68, 69 and 79.
   b) Signatures signed by same individual and/or do not match county registration cards: 7-15, 19, 20 and 26-80.
7. Nominating document number eight:
   a) Unregistered voter: 8.
   b) Do not reside in district: 6 and 7.
   c) Signatures written by same individual: 10-80.
8. Nominating document number nine:
   a) Unregistered voters: 61, 63 and 75.
   b) Do not reside in district: 37, 51, 57 and 58.
9. Nominating document number ten:
   a) Unregistered voters: 6, 7, 8, 10, 12 and 17.